This is an appeal from the order of the juvenile court of Lee County ordering the transfer of seventeen-year-old Anthony Lamar Taylor to the circuit court for criminal prosecution as an adult.
 I
We find that the juvenile court judge did not abuse his discretion in denying a motion for a continuance of the transfer hearing.
On September 27, 1985, a petition was filed alleging that Taylor was delinquent and charging the offense of burglary in the second degree. That same date, Taylor was arrested and counsel was appointed.
On September 30, 1985, a motion to transfer was filed, a hearing was held, and the transfer was ordered. At the beginning of the hearing, defense counsel requested a continuance for two specific reasons. First, counsel stated, "there is a question in my mind as to whether or not Anthony may have some sort of mental retardation under 12-15-34C. I have no other evidence to present to the Court at this time other than what I've said; you know my 10 or 15 minutes talking with Anthony." Defense counsel requested "some type of independent examination of Anthony and a report to be submitted to the Court."
The second reason stated for the continuance was to allow defense counsel to subpoena the eyewitness because "there appears to be a question of whether or not this residence was actually entered." Counsel asserted no specific claim that he was unprepared for the transfer hearing or that he needed more time to prepare.
 A.
The juvenile court judge denied the continuance on the first ground because Taylor, who had been involved in the juvenile court system since 1982, had had psychological evaluations in 1982 and 1983. These reports indicated that Taylor had a mental deficiency. In denying the continuance, the judge stated he was "of the opinion, he's not mentally ill. And there's no evidence even then or currently that he is mentally ill."
During the hearing, Joe Pinkard, the probation officer, testified that Taylor "is not your average youth of mental ability"; that due to his "low intellectual functioning," *Page 1036 
Taylor was "very much gullible to the negative influence of older and aggressive peers"; that his "mental maturity is questionable"; that he can distinguish between right and wrong; and that Taylor has problems with postponing gratification.
The juvenile court judge found that the two prior reports of mental examinations showed "that there's no mental illness. It's a mental deficiency." At the conclusion of the hearing, the judge ruled: "The Court is of the opinion that whatever his mental deficiencies are, that he knows the difference between right and wrong and that's what the Court is going to be governed by." In his written order granting the transfer, the court found that "there are no reasonable grounds to believe that the said child is committable to an institution or agency for the mentally retarded or mentally ill." The order does show that, in granting the transfer, the court did consider "[t]he extent and nature of the physical and mental maturity of the said child."
Section 12-15-68, Code of Alabama 1975, provides that "[c]ontinuances shall be granted by the court only upon a showing of good cause." Considering Taylor's prior psychological evaluations and the vagueness of the allegations of possible mental retardation, we find that the juvenile court judge did not abuse his discretion in denying the motion for a continuance on this ground.
 "It is well settled law that the disposition of a motion for continuance is vested in the sound discretion of the trial court and that its ruling will not be disturbed on appeal, except upon a clear showing of abuse of discretion. . . . It is within the sound discretion of the trial judge to deny a motion for continuance for the purpose of obtaining further study and evaluation of a defendant." Carroll v. State, 445 So.2d 952, 954
(Ala.Cr.App. 1983) (citations omitted).
Although the record does not show when defense counsel first learned that the State was going to file a motion to transfer, the record does show that the motion was filed and the hearing was held on the same morning. Despite these facts, defense counsel did not allege that he had inadequate time to prepare for the transfer hearing or that if a continuance were granted he would obtain evidence of Taylor's mental retardation. All he requested was a continuance so that Taylor could receive a psychological evaluation.
Section 12-15-34(c), Code of Alabama 1975, provides, "When there are grounds to believe that the child is committable to an institution or agency for the mentally retarded or mentally ill, the court shall proceed as provided in section 12-15-70." Section 12-15-70 provides, "The juvenile court in its discretion may, either before or after hearing, cause any child within its jurisdiction to be given a physical or mental examination or both. . . ."
Here, defense counsel had copies of the two prior psychological evaluations. Although the record does not state that defense counsel had been furnished a copy of the report of the probation officer, defense counsel's cross examination of that officer leads this Court to believe that counsel did have a copy of the report and was familiar with its contents.
Because Taylor's prior psychological evaluations had been made available to defense counsel and because of the vagueness of the allegations of possible mental retardation, we find that the motion for a continuance to allow further mental examination was properly denied. See Spellman v. State,469 So.2d 695, 698 (Ala.Cr.App. 1985).
 B.
We also find that a continuance was not required in order to permit defense counsel to subpoena the eyewitness.
Timothy Williams is the only eyewitness identified anywhere in the record. At the transfer hearing, Opelika Police Sergeant Brenda Moss testified that Williams had identified Taylor as the person he saw "inside his house." Sergeant Moss also stated that Taylor had given her a statement in which he admitted entering the house "to steal money." In this statement, Taylor admitted that he "stepped into the house," *Page 1037 
saw someone inside, and "took off running out of the house." Taylor showed the police the house he had "gone into" and admitted that he "knew it was wrong to go into the house."
The eyewitness to the burglary did not have to testify at the transfer hearing. Hearsay evidence is admissible at a transfer hearing because such a hearing is a probable cause hearing at which the guilt or innocence of the juvenile is not in issue.Ex parte Whisenant, 466 So.2d 1006, 1008 (Ala. 1985); Winsteadv. State, 371 So.2d 418, 420 (Ala. 1979); Brown v. State,353 So.2d 1384, 1387 (Ala. 1977); Walker v. State, 365 So.2d 668,669 (Ala. 1978); Gulledge v. State, 419 So.2d 219, 220 (Ala. 1982). Hearsay information may be used to establish probable cause. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329,3 L.Ed.2d 327 (1959); W. LaFave, 1 Search and Seizure 469-70 (1978).
In concluding that the denial of the requested continuance was not error, we recognize that a transfer hearing is a "'critically important' proceeding" at which the juvenile is entitled to counsel. Kent v. United States, 383 U.S. 541, 560,86 S.Ct. 1045, 1057, 16 L.Ed.2d 84 (1966). "The right to representation by counsel is not a formality. It is not a grudging gesture to a ritualistic requirement. It is of the essence of justice." Kent, 383 U.S. at 561, 86 S.Ct. at 1057. "It is fundamental that counsel must be given adequate time for preparation." Thompson v. State, 444 So.2d 899, 901
(Ala.Cr.App. 1984).
We reach our finding that the denial of the continuance was not error based upon our particular consideration of thespecific reasons advanced by defense counsel in support of that continuance. The juvenile court judge was in a much better position than this Court to determine whether or not to grant the continuance. His action should not be overturned unless the record shows a clear abuse of discretion. "[W]hen we examine the denial of a continuance we must focus on 'the reasons presented to the trial judge at the time the request is denied,' . . . and recognize that the question is traditionally within the discretion of the trial judge." Davis v. Alabama,596 F.2d 1214, 1216 (5th Cir. 1979), vacated on other grounds,Alabama v. Davis, 446 U.S. 903, 100 S.Ct. 1827, 64 L.Ed.2d 256
(1980) (citations omitted).
 II
The record shows that the juvenile court satisfied the requirements of Rule 24, A.R.J.P., in conducting the transfer hearing and in ordering Taylor's transfer to circuit court. The transfer order indicated that the court considered each of the six specific factors of Section 12-15-34(d) in determining whether or not to transfer Taylor. Ex parte Anonymous,466 So.2d 81, 82 (Ala. 1984); Brown v. State, 353 So.2d 1384, 1388
(Ala. 1977). The order meets all the statutory requirements and reflects that all the statutory factors were considered. Ray v.State, 435 So.2d 53 (Ala. 1983); Gulledge v. State,419 So.2d 219 (Ala. 1982).
 "There is no requirement that the transferring court make a specific finding on each of the six factors to be considered under § 12-15-34(d), only that the order contain some statement that those factors were considered in order that the appellate courts can make a determination that the requirements of the statute have been met. . . .
 "This court has previously held that a transfer order containing a mere restatement of the factors set out in the statute is valid." Mayne v. State, 416 So.2d 741, 742 (Ala. 1982).
The record shows that, in conducting the hearing, the juvenile court judge substantially complied with the requirements of Rule 24, A.R.J.P.; Ex parte Anonymous, supra.
 III
A review of the totality of the circumstances shows that Taylor intelligently and voluntarily waived his rights and confessed. Fare v. Michael C., 442 U.S. 707, 99 S.Ct. 2560,61 L.Ed.2d 197 (1979); Smith v. State, 484 So.2d 560 (Ala.Cr.App. 1986). *Page 1038 
The judgment of the juvenile court is affirmed.
AFFIRMED.
All Judges concur.